[Cite as *State v. Stinnett*, 2016-Ohio-2711.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 15-CA-24 |
| LAWRENCE B. STINNETT | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield Common Pleas
Court, Case No. 2014-CR-00405

JUDGMENT:     Affirmed in part, Reversed in part, and
Remanded

DATE OF JUDGMENT ENTRY:     April 25, 2016

APPEARANCES:

For Plaintiff-Appellee

GREG MARX
Prosecuting Attorney

By: ANDREA K. GREEN
Assistant Prosecuting Attorney
Fairfield County, Ohio
239 W. Main Street, Ste. 101
Lancaster, Ohio 43130

For Defendant-Appellant

SCOTT P. WOOD
Conrad/Wood
120-1/2 East Main Street
Lancaster, Ohio 43130

*Hoffman, P.J.*

{¶1}　Defendant-appellant Lawrence Stinnett appeals his convictions entered by the Fairfield County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}　At all times pertinent herein, Appellant worked for Green Gourmet Foods, a potato processing plant. The victims, T.M. and C.C., were temporary employees placed at Green Gourmet Foods through a temporary agency. On September 10, 2014, Appellant misled both T.M. and C.C. telling them he had supervisory authority over their positions.　Appellant did not have supervisory capacity over anyone in the facility.

{¶3}　On September 10, 2014, Appellant told T.M. she would need to follow him to his office to obtain a new cleaning tool, or else he would see to her termination. T.M. complied. Appellant led T.M. into a back room of the plant; however, no cleaning supplies were located in the backroom.　Employees were not permitted in the backroom, and no cleaning supplies were located in the area.

{¶4}　T.M. indicated to Appellant she wanted to go back onto the floor to find her supervisor, but he would not allow her to leave.　Appellant grabbed T.M. by her shirt, pulled her back into the room and pushed her against the door.　T.M. asked Appellant to stop.　Appellant kissed T.M. and fondled her breast.　He then sucked on her breast. T.M. again told Appellant to stop and tried to get away.

{¶5}　Appellant then grabbed T.M.'s arm, and pulled her further into the room, pushing her onto a chair. He straddled her legs, and pulled his penis out of his pants. Appellant grabbed T.M. by her ponytail and shoved his penis into her mouth. T.M. tried to pull away, and Appellant put his penis back into his pants.

**{¶6}** T.M. thought Appellant was done, and tried to get up with Appellant still straddling her legs. Appellant pushed her back down. He then removed his penis again, and forcibly put his penis back into her mouth for a second time. When Appellant had ejaculated, he told her not to tell anyone what had happened.

**{¶7}** T.M. continued to work, but shortly thereafter left the building, calling her temporary agency to report the rape. DNA testing confirmed the presence of Appellant's saliva on T.M.'s bra.

**{¶8}** On the same date of September 10, 2014, Appellant told C.C. his office was in the back of the building, and she should come back to his office so she would know where it was if she needed him. While in the back room, Appellant lifted up C.C.'s shirt, and put his hand inside her bra. C.C. testified at trial she complied out of fear. C.C. then told Appellant "I don't want this. I didn't come back here for this. This shouldn't be happening."

**{¶9}** Appellant unzipped his pants, pulled out his penis, and forced C.C. to touch it. Appellant would not allow C.C. to leave the room. Appellant grabbed C.C. by her pants, pulled her back into the room, telling her she did not need to tell anyone because they would get in trouble. Appellant used force to stop C.C. from leaving the room. C.C. stopped Appellant from putting his hands in her pants, and he then started putting his hands over her hands on her vaginal area over C.C.'s vaginal area, over her clothes, despite her trying to back away from him.

**{¶10}** C.C. later learned Appellant had sexually assaulted T.M. She then reported the incident to the Baltimore Police Department.

{¶11} The Fairfield County Grand Jury indicted Appellant for the two incidents herein, as follows:

{¶12} Count One charged Appellant with Rape, in violation of R.C. 2907.02(A)(2) and (B), for the rape of T.M.;

{¶13} Count Two charged Appellant with Kidnapping, in violation of R.C. 2905.01(A)(4) and (C)(1), as to T.M.;

{¶14} Count Three charged Appellant with Rape, in violation of R.C. 2907.02 (A) and (B), as to T.M.;

{¶15} Count Four charged Appellant with Kidnapping, in violation of R.C. 2905.01(A)(4) and (C)(1), as to T.M.;

{¶16} Count Five charged Appellant with Gross Sexual Imposition, in violation of R.C. 2907.05(A)(1) and (C)(1), as relates to T.M.;

{¶17} Count Six charged Appellant with Kidnapping, in violation of R.C. 2905.01(A)(4) and (C)(1), as relates to T.M.;

{¶18} Count Seven charged Appellant with Gross Sexual Imposition in violation of R.C. 2907.05(A)(1) and (C)(1), as relates to C.C.;

{¶19} Count Eight charged Appellant with one count of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(1) and (C)(1), as relates to C.C.;

{¶20} Count Nine charged Appellant with Kidnapping, in violation of R.C. 2905.01(A)(4) and (C)(1), as relates to C.C.; and

{¶21} Count Ten charged Appellant with Gross Sexual Imposition, in violation of R.C. 2907.05(A)(1) and (C)(1), as relates to C.C.

**{¶22}** On January 5, 2015, Appellant filed a motion to sever the offenses in the indictment, requesting two separate trials with regard to the allegations pertaining to each victim. Via Entry of January 16, 2015, the trial court overruled Appellant's motion to sever offenses.

**{¶23}** Following a jury trial, Appellant was found guilty on two counts of rape, three counts of kidnapping and three counts of gross sexual imposition. The jury returned a verdict of not guilty as to one count of kidnapping relating to T.M. (Count Two) and one count of gross sexual imposition relating to C.C. (Count Seven).

**{¶24}** On April 13, 2015, Appellant was sentenced to seven years on Count One, nine years as to Count Three, four years as to Court Four, one year as to Count Five, six years as to Count Six, one year as to Count Eight, five years as to Count Nine, and one year as to Count Ten. Count One, Count Three, Count Four, Count Five, Count Six, Count Eight, Count Nine and Count Ten were ordered to run consecutively to each other for a total term of incarceration of thirty-four years.

**{¶25}** Appellant appeals, assigning as error:

**{¶26}** "I. THE TRIAL COURT ERRED IN FAILING TO SEVER THE OFFENSES AGAINST APPELLANT.

**{¶27}** "II. THE TRIAL COURT ERRED IN ALLOWING A WITNESS TO READ TO THE JURY FROM A WRITING THAT WAS USED TO REFRESH MEMORY.

**{¶28}** "III. THE TRIAL COURT ERRED IN FAILING TO MERGE MULTIPLE COUNTS AS ALLIED OFFENSES OF SIMILAR IMPORT."

I.

{¶29} In the first assignment of error, Appellant maintains the trial court erred in failing to sever the offenses pertaining to the two separate victims and in failing to conduct two separate trials.

{¶30} Joinder of offenses is governed by Crim. R. 8(A); offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. See, *State v. Torres,* 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka,* 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (8th Dist.1995).

{¶31} If similar offenses are properly joined pursuant to Crim. R. 8(A), the accused may move to sever the charges pursuant to Crim. R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Strobel,* 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist.1988). Appellant argues the trial court erred in overruling his motion to sever. To prevail on such a claim, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the potential prejudice to the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. *State v. Schaim,* 65 Ohio St.3d 51,

59, 600 N.E.2d 661 (1992), citing *State v. Hamblin,* 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476 (1988) and *Drew v. United States,* 331 F.2d 85 (D.C.Cir.1964). A defendant has not demonstrated prejudice where: (1) if the counts were severed, evidence of alleged misconduct from each count would be admissible in separate trials, and (2) if such evidence would not be admissible, the evidence of each count is simple and distinct. *Id.*

{¶32} "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Schaim,* supra, 65 Ohio St.3d at 59, 600 N.E.2d 661, internal citation omitted. Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed. *State v. Markwell,* 5th Dist. Muskingum No. CT2011–0056, 2012-Ohio-3096, 2012 WL 2613903, ¶ 46.

{¶33} We recognize the admission of other-acts evidence is limited because of the substantial danger a jury will convict the defendant solely because it assumes the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment, and this danger is especially high in a case "of an inflammatory nature" such as this one. *Schaim,* supra, 65 Ohio St.3d at 59, 600 N.E.2d 661, citing *State v. Curry,* 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). However, "[a]s long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of 'other acts' evidence if it is 'related to and share[s] common features with the crime in question.' " *State v. Markwell,* supra, 2012-Ohio-3096, 2012 WL 2613903, at ¶ 45, citing *State v. Lowe,* 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus.

**{¶34}** The State argues the evidence of each offense would have been admissible at separate trials pursuant to Evid.R. 404(B), which states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * * *." The Rule is in accord with R.C. 2945.59, which states:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶35}** Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Carter* (1971), 26 Ohio St.2d 79, 83, 55 O.O.2d 130, 269 N.E.2d 115; *State v. Lowe* (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, citing *State v. Broom* (1988), 40 Ohio St.3d 277, 282–283, 533 N.E.2d 682; Evid.R. 404(B); R.C. 2945.59; *Miley,* 2006-Ohio-4670, 2006 WL 2589816; *Clay,* 187 Ohio App.3d 633, 2010-Ohio-2720, 933 N.E.2d 296.

**{¶36}** In the case at bar, no dispute exists that appellant was the perpetrator. In other words, no dispute exists as to identity. *Miley,* 2006-Ohio-4670, 2006 WL 2589816, at ¶ 73; *Clay,* 187 Ohio App.3d 633, 2010-Ohio-2720, 933 N.E.2d 296, at ¶ 45. As the identity of the person who had committed the crime was not an issue, nor was Appellant's intent or motive; the other acts would not have been properly admitted to prove appellant's scheme, plan, or system in committing the crimes charged. *Mt. Vernon v. Hayes,* Knox App. No. 09–CA–0007, 2009-Ohio-6819, 2009 WL 4985247, at ¶ 26. For a comparable analysis, see also this court's opinions in *State v. Ross*, Stark App. No. 2009CA00253, 2010-Ohio-5096, 2010 WL 4111163, and *State v. Gresh*, Delaware App. No. 09–CAA–012–0102, 2010-Ohio-5814.  Additionally, Appellant did not claim mistake or accident. Rather, Appellant denied committing the sexual acts altogether.

**{¶37}** However, evidence as to each victim herein was simple and direct.  The jury was capable of separating the proof of multiple charges where, as here, the evidence of each crime is uncomplicated. *State v. Hamblin,* 37 Ohio St.3d 153, 159, 524 N.E.2d 476 (1988). Each victim testified separately and the prosecution introduced evidence of each distinct crime. The separate offenses were clearly laid out for the jury, and the jury was properly instructed as to each offense.

**{¶38}** Accordingly, we find the trial court did not abuse its discretion in overruling Appellant's motion to sever.  The first assignment of error is overruled.

II.

**{¶39}** In the second assigned error, Appellant maintains the trial court erred in allowing Investigator Scott Hargrove to testify regarding his search of jail calls made by Appellant while incarcerated and waiting for trial.  One of the phone calls was played for

the jury, wherein Appellant made statements to an acquaintance regarding his assessment of the case and whether he could be convicted of abduction.

**{¶40}** Appellant asserts the trial court permitted investigator Hargrove to read from a transcript to the jury over Appellant's objection in order to refresh his recollection. Hargrove had not prepared the transcript; rather, the transcript was prepared by Appellant's counsel.

**{¶41}** Evidence Rule 612 allows a party to use a writing to refresh a witness' recollection, but the witness must then testify based upon his own present independent knowledge. *State v. Scott* (1972), 31 Ohio St.2d 1. The testimony is the evidence, not the contents of the writing. Thus, a party may not read the statement aloud, have the witness read it aloud, or otherwise place the evidence before the jury. *State v. Ballew* (1996), 76 Ohio St.3d 244. To allow the State's witness to read from the writing is an evidentiary error. *State. v. Powell* (2012), 132 Ohio St. 233.

**{¶42}** Here, portions of the recording of the phone call cut out and were difficult to hear. Appellant objected to Investigator Hargrove injecting his interpretation as to what the recording states.

**{¶43}** The following exchange occurred on the record,

MR. WOOD: Your Honor, the reason why I'm raising it in this case is because this witness has already testified as to the nature of the recording, that there are times when it cuts out. I don't' want the witness subjecting his own interpretation as to what was said into the recording.

So that's why with regard to this specific recording, I think the recording speaks for itself. The jury can determine what the Defendant says.

MS. LAMBERSON: Your Honor, if I may. I'd be happy to play the statement first so Investigator Hargrove has a chance to hear it again before he answers a question to assist the fact-finder with hearing all of the facts that are presented.

THE COURT: As long as the wintess is willing to say word-for-word what was on that tape, then you can ask that question, if you have a good-faith reason to believe that's what he's going to answer.

Tr. at 508.

{¶44} The trial court then played the audio recording. On the recording Appellant states,

MALE VOICE: You're not settling on nothing, are you?

MR. STINNETT: No. As far as the abduction goes, they can get me on the abduction, because we were in my office and there's a door on it. You know what I mean?

(Inaudible) but if they can prove everything else is a lie, though, that can still be beat. You know what I mean?

MALE VOICE: Will do.

Tr. at 511.

{¶45} At trial, Investigator Hagrove testified,

(By Ms. Lamberson) Were you able to review this recording?

A. Yes

Q. Are you able to hear what the Defendant is saying in this recording?

A. Yes.

Q. Do you-- are you confident that you know what he said?

A. Yes.

Q. What did he say?

(At which point a written transcript of the call was used to refresh the witnesses recollection)

\*\*\*

THE COURT: Right. I agree.

So to that extent, you can use this document to refresh the witness's recollection.

\*\*\*

Q: Is there any other portion of that statement that the Defendant said on there? Take a moment and re-read it again.

A: "As far as the abduction goes, they can get me on the abduction because we were in my office and there's a door on it. You know what I mean?"

And then it's inaudible.

"…prove everything else is a lie. You know what I mean?"

Tr. at 514-525

**{¶46}** Here, after the call was played for the jury, the witness was asked to reiterate for the jury what Appellant stated in the jail call, as the call was difficult to hear. The trial court permitted the witness to testify what Appellant stated in the call provided it was word-for-word what was on the tape. The trial court allowed the witness to review

transcript to refresh the witness' recollection only after determining the writing was an accurate representation of what was stated on the telephone call. The record is unclear whether Appellant was reading from the transcript or merely used the writing to refresh his recollection. The record does not affirmatively demonstrate the witness read from the transcript. However, assuming arguendo Appellant was reading from the writing, we find Appellant has not demonstrated prejudice from the error based on the strength of the other evidence presented.

{¶47} The second assignment of error is overruled.

III.

{¶48} In the third assignment of error, Appellant maintains the trial court erred in failing to merge multiple counts as allied offenses of similar import.

{¶49} Revised Code, Section 2941.25 reads,

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶50} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court held,

Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. [*State v.*] *Blankenship,* 38 Ohio St.3d [116] at 119, 526 N.E.2d 816 [ (1988) ] (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic] ). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.*] *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

**{¶51}** Recently, the Ohio Supreme Court in *State v. Ruff,* 2015-Ohio-995, 143 Ohio St.3d 114, addressed the issue of allied offenses, determining the analysis set forth in *Johnson* to be incomplete. The Court in *Ruff,* held,

When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶52}** Appellant submits the trial court erred in failing to merge the charges relating to each alleged victim due to the fact Appellant had a single animus, and engaged in the same conduct in the commission of the offenses.

**{¶53}** The Ohio Supreme Court held in *State v. Logan* (1979), 27 Ohio St2d 196,[1]

It is clear from the plain language of the statute that no movement is required to constitute the offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient. Thus, implicit within every forcible rape (R.C. 2907.02(A)(1) is a kidnapping. The same may be said of robbery

---

[1] The Ohio Supreme Court recently recognized the holding in *Logan* as valid law. *State v. Williams* (2012), 134 Ohio St.3d 482.

(R.C. 2911.02), and, under certain circumstances, of felonious assault (R.C. 2903.11).

Recognizing that in many cases a single criminal act could constitute two or more similar crimes, the General Assembly attempted to remedy this problem by enacting R.C. 2941.25, the multiple-count provision, as previously set forth.

The legislative Committee Comment to R.C. 2941.25 observes that "(t)he basic thrust of the section is to prevent 'shotgun' convictions." By way of example, the comment mentions that a thief is theoretically guilty of both theft and receiving stolen goods, but states that under this section he may be convicted of only one of those offenses.

It is apparent that the statute has attempted to codify the judicial doctrine sometimes referred to as the doctrine of merger [Footnote omitted], and other times as the doctrine of divisibility of offenses [Footnote omitted] which holds that "a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." State v. Botta (1971), 27 Ohio St.2d 196, 201, 271 N.E.2d 776, 780. However, R.C. 2941.25(B), by its use of the term "animus," requires us to examine the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct. In this sense, we believe that the General Assembly intended the term "animus" to mean purpose or, more properly, immediate motive.

Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. See, generally, State v. Robinson (1975), 48 Ohio App.2d 197, 205, 356 N.E.2d 725, affirmed (1976) 47 Ohio St.2d 103, 114, 351 N.E.2d 88; State v. Gantt (1975), 26 N.C.App. 554, 557, 217 S.E.2d 3, 5; and State v. Evans (1976), 219 Kan. 515, 519-20, 548 P.2d 772, 777.

Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime. For example, when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery. Under our statutes, he simultaneously commits the offense of kidnapping (R.C. 2905.01(A)(2) by forcibly restraining the victim to facilitate the commission of a felony. In that instance, without more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses. Likewise, where an individual's immediate motive is to engage in sexual intercourse, and a so-called "standstill" rape is committed, the perpetrator may be convicted of either rape or kidnapping, but not both. In contradistinction, an individual who restrains his intended rape victim for several days prior to perpetrating the rape, or who transports her out of the state or across the state while intermittently raping her, may well be considered to have a

separate animus as to each of the offenses of kidnapping and rape, and convictions on multiple counts could reasonably be sustained.

{¶54} As to T.M., Appellant grabbed T.M. by her shirt, pulled her back into the room and pushed her against the door. T.M. asked Appellant to stop. He kissed her and fondled her breast on the outside of her bra. He sucked on her breast inside and outside of her bra. T.M. again told Appellant to stop and tried to get away. As a result, Appellant was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(1). [Count Five]

{¶55} Appellant then grabbed T.M.'s arm, and pulled her further into the room, pushing her onto a chair. He straddled her legs, and then pulled his penis out of his pants. He grabbed T.M. by her ponytail and shoved his penis into her mouth. T.M. tried to pull away, and Appellant put his penis back into his pants. The act constituted the first count of Rape [Count One] relating to T.M., in violation of R.C. 2907.02(A)(2), and kidnapping [Count Four], in violation of R.C. 2905.01(A)(4) and (C)(1). Pursuant to *Logan*, supra, Appellant had but one animus and engaged in the same conduct in committing both the offense of rape and the offense of kidnapping. R.C. 2941.25 prohibits the imposition of a separate sentence for both convictions. Accordingly, Count Four, Kidnapping, relating to T.M. should have merged with Count One, Rape, for sentencing.

{¶56} Following the first rape offense, T.M. tried to get up with Appellant still straddling her legs. Appellant pushed her back down. He then removed his penis again, and forcibly put his penis back into her mouth for a second time, constituting the second count of rape [Count Three] and a subsequent count of kidnapping [Count Six]. Again, pursuant to *Logan*, supra, Count Three, Rape, should merge with Count Six, Kidnapping as allied offenses.

{¶57} As to the offenses relating to C.C., Appellant lifted up C.C.'s shirt, and put his hand inside her bra. C.C. testified at trial she complied out of fear. C.C. then told Appellant "I don't want this. I didn't come back here for this. This shouldn't be happening." Appellant would not allow C.C. to leave the room.

{¶58} Appellant then unzipped his pants, pulled out his penis, and forced C.C. to touch it. Appellant's actions constituted  a second separate count of gross sexual imposition relating to C.C. [Count Eight]

{¶59} Appellant then grabbed C.C. by her pants, pulled her back into the room, telling her she did not need to tell anyone because they would get in trouble. The actions constituted the offense of kidnapping [Count Nine], as Appellant used force to stop C.C. from leaving the room. C.C. stopped Appellant from putting his hands in her pants, and he then started putting his hands over her hands on her vaginal area outside her clothes and over her vaginal area. These actions constituted the second separate count of gross sexual imposition relating to C.C. [Count Ten].

{¶60} Again, pursuant to *Logan*, Appellant had one animus and engaged in one act of conduct in the commission of Counts Nine and Ten.  Further, C.C. suffered one harm. Accordingly, we find Counts Nine and Ten should merge pursuant to 2941.25.

{¶61} The third assignment of error is sustained in part and overruled in part and this matter is remanded to the trial court for resentencing.

{¶62}  The judgment of the Fairfield County Court of Common pleas is affirmed in part, reversed in part, and remanded for resentencing.

By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur