[Cite as *State v. Blasenhauer*, 2017-Ohio-7357.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

ROBERT L. BLASENHAUER

      Defendant-Appellant

JUDGES:
Hon. Patricia A. Delaney, P.J.
Hon. William B. Hoffman, J.
Hon. Earle E. Wise, Jr., J.

Case No. 16-CA-22

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Guernsey County Court of Common Pleas, Case No. 15-CR-224 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 24, 2017 |
| APPEARANCES: | |

For Plaintiff-Appellee

JASON R. FARLEY
Assistant Guernsey County
Prosecuting Attorney
145 N. 7th Street
Cambridge, Ohio 43725

For Defendant-Appellant

STEPHEN E. PALMER
WILLIAM FORNIA
Yavitch & Palmer, Co. L.P.A.
511 South High Street
Columbus, Ohio 43215

*Hoffman, J.*

{¶1} Defendant-appellant Robert L. Blasenhauer, Jr. appeals his conviction on one count of rape, in violation of R.C. 2907.02(A)(1)(b), entered by the Guernsey County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} At all times relevant, Appellant was married to M.B., and shared four children, in addition to seven children Appellant fathered in previous relationships. It is uncontested the parties were experiencing marital difficulties, personally and financially, at the time of the events herein, and were contemplating divorce.

{¶3} On the evening of September 26th, 2015, Appellant and M.B. had a bonfire with their children. The parties consumed alcoholic beverages, including shots of whiskey, with a neighbor. It is undisputed Appellant was intoxicated. Appellant had difficulty holding his head up, was staggering while walking and slurring his words. M.B. was also intoxicated. Seven of the parties' children were home during the evening. B.B., the parties' eight year-old daughter, went inside from the bonfire, falling asleep in Appellant and M.B.'s bedroom.

{¶4} Later in the evening, Appellant and M.B. went inside, washing the dirt from their feet in the bathroom. Appellant proceeded to the bedroom, while M.B. went to the kitchen to eat cereal. M.B. also sat in the family room with G.B., Appellant's daughter.

{¶5} M.B. later entered the bedroom, observing Appellant on top of B.B. in the bed. Appellant's hand was moving. M.B. turned the bedroom light on, screaming at Appellant to get off B.B. Appellant put his shorts on, throwing a blanket over B.B.

{¶6} G.B., Appellant's other daughter, overheard M.B. yelling and observed Appellant come out of the bedroom, stating to M.B. "you're stupid." M.B. told Appellant to leave the residence.

{¶7} B.B. stated she went inside from the bonfire, going to bed in her parents' room. She eventually fell asleep, but was later awakened by Appellant pulling the covers off of her. Appellant pulled her pants off of her, followed by pulling her underwear down her left leg. Appellant touched his mouth to her "bad spot," where she "goes to the bathroom." She felt Appellant put his "bad spot" in her "bad spot," but not "too far". He rubbed his "bad spot" while touching B.B. M.B. then walked into the room, yelling at Appellant, who then left the residence.

{¶8} M.B. observed a wet spot between B.B.'s legs on the bed, appearing to be semen. She photographed the scene. M.B. also observed fluid in B.B.'s private area, near her legs and buttocks. She photographed the image. M.B. ran to the neighbors, later calling law enforcement.[1]

{¶9} Deputy Oakley of the Guernsey County Sheriff's Department arrived at the scene, followed by Lieutenant Mackie. M.B. was emotionally "hysterical" and crying. Deputy Oakley observed B.B. on the bed, with a sheet or a blanket on top of her.[2] B.B. was not wearing underwear, and a small pair of underwear were located near her on the bed. The underwear were later determined to be clothing M.B. intended to use to "clean

---

[1] Contradictory testimony offered at trial indicates M.B. may have placed a phone call prior to going to the neighbor's home.
[2] The evidence offered at trial was contradictory as to the state of dress or undress of B.B. at the time law enforcement arrived.

up" B.B., prior to calling dispatch. Deputy Oakley observed small wet spots on the bed sheets, directly below B.B.'s buttocks area, and a large round spot of a fluid substance.

**{¶10}** Lieutenant Mackie testified M.B. was hysterical at the residence. He further recounted the apprehension of Appellant, who was found passed out in his work truck, with no socks and no shirt on. He wore only jean type shorts. Appellant was visibly intoxicated. A loose pair of boxer shorts was found in his pocket. He was not wearing underwear.

**{¶11}** Appellant was indicted on one count of rape, in violation of R.C. 2907.02(A)(1)(b), a first degree felony, with a victim under the age of thirteen.[3]

**{¶12}** Following a jury trial, Appellant was convicted of the charge on September 30, 2016, and sentence was imposed on October 3, 2016, via Judgment Entry of Sentence.[4]

**{¶13}** Appellant appeals, assigning as error,

I. THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING (WITHOUT OBJECTION) IMPPROPER [SIC] HEARSAY EVIDENCE IN VIOLATION OF THE RULES OF EVIDENCE AND APPELLANT'S RIGHTS OF CONFRONTATION AND TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

---

[3] It is undisputed B.B. was eight years of age at all times relevant.
[4] Appellant was sentenced to eighteen years to life in prison, but does not appeal the sentence imposed herein.

II. THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING (WITHOUT OBJECTION) OTHER ACTS EVIDENCE IN VIOLATION OF THE RULES OF EVIDENCE AND APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING (WITHOUT OBJECTION) IMPROPER EXPERT TESTIMONY ABOUT THE VERCITY [SIC] OF THE ALLEGED VICTIM IN VIOLATION OF THE RULES OF EVIDENCE AND APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

IV. THE PROSECUTOR'S REFERENCE TO APPELLANT'S EXERCISE OF THE FIFTH AMENDMENT RIGHT TO REMAIN SILENT CONSTITUTED PLAIN ERROR, SERIOUSLY AFFECTING THE OUTCOME OF APPELLANT'S TRIAL.

V. THE PROSECUTOR'S REFERENCE TO APPELLANT'S UTILIZATION OF HIS 401(K) TO PAY FOR HIS DEFENSE VIOLATED APPELLANT'S RIGHT TO COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.

VI. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO HIS RIGHTS

GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION.

VII. UNDER THE DOCTRINE OF ACCUMULATED ERROR, THE ERROR COMMITTED BY THE COURT, THE MISCONDUCT COMMITTED BY THE STATE, AND THE INEFFECTIVE ASSISTANCE OF APPELLANT'S TRIAL COUNSEL WARRANT REVERSAL.

VIII. THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY OVERRULING APPELLANT'S CRIM. R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AS THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGES BEYOND A REASONABLE DOUBT.

IX. THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY PROVISIONS OF THE OHIO CONSTITUTION BECAUSE THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

{¶14} In the first assigned error, Appellant maintains the trial court committed plain error in allowing hearsay statements into evidence. Specifically, Appellant challenges the statements made by Deputy Oakley, M.B. and K.B. relative to the alleged other acts committed against K.B., Appellant's daughter from a prior relationship.

{¶15} It is well-settled a party must object in order to preserve an issue for appeal. See, e.g., *State v. Jones* (2001), 91 Ohio St.3d 335, 343, 2001–Ohio–57, 744 N.E.2d 1163; *State v. Robb* (2000), 88 Ohio St.3d 59, 75, 2000–Ohio–275, 723 N.E.2d 1019; *State v. Lindsey* (2000), 87 Ohio St.3d 479, 482, 2000–Ohio–465, 721 N.E.2d 995. Because appellant failed to object to the testimony during the hearing, we must determine whether the trial court committed plain error in allowing the testimony. Plain error is reversible error to which no objection was lodged at trial; it is obvious and prejudicial, and if permitted it would have a material adverse effect on the character and public confidence in judicial proceedings. *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221. See, also, Crim.R. 52(B). Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

{¶16} Appellant maintains the trial court committed plain error in allowing Deputy Oakley to testify as to M.B.'s recantation of events during his investigation. Deputy Oakley testified as to M.B.'s statements to law enforcement upon their arrival to the residence for purposes of the investigation. Such statements by M.B. would appear to have been excepted from the hearsay rule as excited utterances. Specifically, Deputy Oakley testified M.B. relayed the events of the evening to him upon arrival and M.B. indicated K.B. had told her of a prior incident in which Appellant engaged in alleged sexual conduct

with her.[5] Deputy Oakley spoke with K.B.  The testimony was cumulative to the testimony of M.B. herself and K.B. who testified she made the statements, but later recanted the allegations prior to trial.  Appellant had the opportunity to cross-examine both M.B. and K.B., therefore the testimony was not prejudicial as both testified at trial.

{¶17} Appellant further asserts the medical records from Akron Children's Hospital offered as exhibits by the State constitute hearsay.  Specifically, Exhibit B, commenting B.B. presented for evaluation after "pt's father was found on top of her naked," and Exhibit C, relating a history presented by caregiver, M.B. Exhibit C states, "Patient told her mother that her father put his 'bad spot on her bad spot.' Child told her mother this is not the first time it had occurred.*** Mother also stated that her 12 y.o. Daughter [K.B.] said that he had touched her butt before." Dr. Hamad, the treating physician, then relied upon the statements in his medical treatment and diagnosis.  He testified,

> …when I reviewed the records from the social worker, this wasn't the first time, and then the patient had stated to the social worker that she didn't like to think about it so, you know, for her, this may have been normal and this is what she thought was normal, which would explain why she wasn't affected…

Tr. at 324.

---

[5] This amounts to double hearsay.

**{¶18}** While the statements may constitute hearsay, we find any error in the admission of the evidence harmless and clearly does not rise to the level of plain error. The testimony was cumulative to the testimony offered by other witnesses and not prejudicial as M.B., B.B. and K.B. were all subject to examination with regard to the statements. B.B.'s calmness during Dr. Hamad's examination arguably reinforced the defense theory M.B. was lying about the incident.

**{¶19}** Appellant's first assigned error is overruled.

II.

**{¶20}** In the second assigned error, Appellant maintains the trial court committed plain error in allowing testimony with regard to other bad acts evidence.

**{¶21}** In *State v. Stinnet*, Fairfield App. No. 15CA24, 2016-Ohio-2711, this Court held,

> We recognize the admission of other-acts evidence is limited because of the substantial danger a jury will convict the defendant solely because it assumes the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment, and this danger is especially high in a case "of an inflammatory nature" such as this one. *Schaim,* supra, 65 Ohio St.3d at 59, 600 N.E.2d 661, citing *State v. Curry,* 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). However, "[a]s long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of 'other acts' evidence if it is 'related

to and share [s] common features with the crime in question.'" *State v. Markwell,* supra, 2012–Ohio–3096, 2012 WL 2613903, at ¶ 45, citing *State v. Lowe,* 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus.

The State argues the evidence of each offense would have been admissible at separate trials pursuant to Evid.R. 404(B), which states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * * *." The Rule is in accord with R.C. 2945.59, which states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident. *State v. Carter* (1971), 26 Ohio St.2d 79, 83, 55 O.O.2d 130, 269 N.E.2d 115; *State v. Lowe* (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, citing *State v. Broom* (1988), 40 Ohio St.3d 277, 282–283, 533 N.E.2d 682; Evid.R. 404(B); R.C. 2945.59; *Miley,* 2006–Ohio–4670, 2006 WL 2589816; *Clay,* 187 Ohio App.3d 633, 2010–Ohio–2720, 933 N.E.2d 296.

In the case at bar, no dispute exists that appellant was the perpetrator. In other words, no dispute exists as to identity. *Miley,* 2006–Ohio–4670, 2006 WL 2589816, at ¶ 73; *Clay,* 187 Ohio App.3d 633, 2010–Ohio–2720, 933 N.E.2d 296, at ¶ 45. As the identity of the person who had committed the crime was not an issue, nor was Appellant's intent or motive; the other acts would not have been properly admitted to prove appellant's scheme, plan, or system in committing the crimes charged. *Mt. Vernon v. Hayes,* Knox App. No. 09–CA–0007, 2009–Ohio–6819, 2009 WL 4985247, at ¶ 26. For a comparable analysis, see also this court's opinions in *State v. Ross,* Stark App. No.2009CA00253, 2010–Ohio–5096, 2010 WL 4111163, and *State v. Gresh,* Delaware App. No. 09–CAA–012–0102, 2010–Ohio–5814. Additionally, Appellant did not claim mistake or accident. Rather, Appellant denied committing the sexual acts altogether.

**{¶22}** Here, Appellant denied committing the sexual acts, specifically ejaculation, but did not dispute his presence in the bedroom.  Appellant maintained M.B. fabricated the story, motivated by her desire to end the marriage and separate herself from Appellant

and Appellant from the children. Appellant's intent or motive in laying in the bed was at issue, as he claims to not remember the incident, denying any sexual motive. Accordingly, the other acts allegations with regard to B.B. and K.B. were relevant, and properly admissible.

**{¶23}** Assuming arguendo, the evidence was not properly admissible as other acts evidence, Appellant has not demonstrated the trial court committed plain error in allowing the testimony. K.B. testified at trial she recanted her allegations prior to trial. G.B.[6] testified she stated to M.B. Appellant had never touched her inappropriately, and she had never witnessed Appellant touch others inappropriately.

**{¶24}** Accordingly, Appellant has not demonstrated plain error.

**{¶25}** The second assignment of error is overruled.

III.

**{¶26}** In the third assigned error, Appellant maintains the trial court committed plain error in allowing Dr. Hamad, the treating emergency room physician, to testify as to the demeanor and "credibility" of B.B. Specifically, Dr. Hamad testified at trial,

> Q. Okay. What—what caused you to remember her specifically?
>
> A. Well, when I went into the room, mother was shocked. She was crying, and it was like she was in disbelief of what happened, and the patient was sitting there, and it was like nothing had happened to her. She was like

---

[6] Appellant's daughter from a previous relationship, who was at the residence during the night of the incident.

this is normal for any child as far as what she had gone through and the history that she had told me.

**{¶27}** Later while still on direct examination, Dr. Hamad clarified his statement,

Q. Can you describe that in a little more detail?

A. It was—it was concerning because she just really was very like nothing had happened, and when I reviewed the records from the social worker, this wasn't the first time, and then the patient had stated to the social worker that she didn't like to think about it so, you know, for her, this may have been normal and this is what she thought was normal, which would explain why she wasn't affected. Mom was obviously crying and very upset.

Q. And [B.B.] said I don't want to think about it?

A. Yes, to the social worker.

Q. All right. And that it had happened at least five times?

A. Correct.

Q. But she doesn't like to count because I don't want to think about it?

***

A. Yes. Sorry.

Tr. at 325-326.

**{¶28}** We find the admission of the statements to be error, but harmless error. The out of court statements were made by the social worker and the alleged victim. The victim, B.B., later testified at trial; therefore, Appellant had the ability to cross-examine and confront both B.B. and Dr. Hamad as to the statements made.

**{¶29}** Appellant has not demonstrated the trial court committed plain error in allowing the testimony. Appellant has not established sufficient prejudice to require reversal.

### IV. and V.

**{¶30}** In the fourth and fifth assigned errors, Appellant maintains the trial court committed plain error in allowing the State to comment as to Appellant's "silence" and statements while in custody, and his retaining counsel with the use of his 401(K) account.

**{¶31}** The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott,* supra, 51 Ohio St.3d at 166, 555 N.E.2d 293.

**{¶32}** A prosecutor's remarks constitute misconduct if remarks were improper and if the remarks prejudicially affected an accused's substantial rights. *State v. Williams*, 99 Ohio St.3d 439, 793 N.E.2d 446, 2003-Ohio-4164. Prosecutorial misconduct will not

provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. The touchstone of analysis is the "fairness of the trial, not the culpability of the prosecutor." *State v. Gapen*, 104 Ohio St.3d 358, 819 N.E.2d 1047, 2004-Ohio-6548. The record must be viewed in its entirety to determine whether the allegedly improper remarks were prejudicial. *State v. Treesh* (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.

**{¶33}** In opening statement, the prosecutor herein referred to Appellant's conduct in custody with Lieutenant Mackie, stating,

Lieutenant Mackie says, okay, do you want to know why you're here? Well, yeah. Well, your wife walked in and found you having sexual relations with your daughter, and the response of [Appellant]…is he nods his head, and then he shakes his head, and he says, caught me having sex? *Doesn't jump up and scream no, I didn't do that.* (Emphasis added).

Tr. at 125-126.

**{¶34}** In closing arguments, the prosecutor stated,

Oh wait, maybe [the semen was] left over from when [Appellant] ejaculated on [M.B.'s] breasts, which he testified to after he heard the doctor

say if it had leaked out of a woman, we would have her DNA. Oh wait, I

ejaculated on her breasts.

Tr. at 746.

**{¶35}** The prosecutor continued in closing statements, "You heard what he said, and how his testimony now fits the same testimony he heard." Tr. at 749.

**{¶36}** We find the prosecutor's statements did not affect the fairness of the trial. Rather, the evidence demonstrates Appellant was intoxicated at the time he was brought into custody. Appellant took the stand at trial. He testified as to his reaction to being told of the allegations with regard to B.B. Specifically, he stated he did not react and jump up, as it felt as if his "soul had been ripped" out of him. Tr. at 671. He maintains "it was too hard to believe, hearing something like that." In addition, he was "hungover." He claims he wanted "to die right then and there." Tr. at 672. Appellant did not admit to the allegations, merely assenting to his wife's statements, believing her credibility and veracity. He stated, "Something had to have happened," if his wife said it did.

**{¶37}** Appellant had no recollection of the events, and did not deny the acts occurred. Appellant maintained he had no memory of the events, he blacked out, and "if his wife said it happened, he believed her." While we find the prosecutor's comment during opening was an indirect comment on Appellant's right to remain silent, we do not find it rises to the level of reversible error. We find the prosecutor's comments during closing argument were permissible.

**{¶38}** Appellant further argues the prosecutor improperly commented on his attaining legal representation with funds withdrawn from his 401(k). However, the prosecutor's statements were made in response to Appellant's own testimony alleging motive of M.B. to fabricate the allegations, and her desire to access his 401(k) account. Accordingly, we do not find this statement was made with respect to Appellant's right to counsel; rather, in rebuttal to Appellant's own testimony.

**{¶39}** The fourth and fifth assignments of error are overruled.

VI.

**{¶40}** In the sixth assignment of error, Appellant maintains he was denied the effective assistance of trial counsel due to counsel's failure to object to the hearsay statements, other acts evidence and prosecutorial statements set forth in the first five assigned errors.

**{¶41}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

**{¶42}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same

way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶43} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶44} While the statements and alleged errors raised by Appellant may have been objectionable, counsel may have deliberately chosen not to object to avoid drawing the jury's attention to the comments. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 101. Strategic choices made after substantial investigation "will seldom if ever" be found wanting. *Strickland,* supra, 466 U.S. at 681. Moreover, the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Crawford,* 5th Dist. No. 07 CA 116, 2008–Ohio–6260, ¶ 72, appeal not allowed, 123 Ohio St.3d 1474, 2009–Ohio–5704, 915 N.E .2d 1255, citing *State v. Fears,* 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999). Ultimately we find no reasonable probability the outcome of the trial would have been different had such objections been raised. See, *State v. Graber,* 5th Dist. No.2002CA00014, 2003–Ohio–137, ¶ 154, appeal not allowed, 101 Ohio St.3d 1466, 2004–Ohio–819, 804 N.E.2d 40.

{¶45} The sixth assigned error is overruled.

VII.

**{¶46}** In the seventh assigned error, Appellant maintains the doctrine of accumulated error applies, warranting reversal of his conviction.

**{¶47}** Based upon our analysis and disposition of the first, second, third, fourth, fifth and sixth assigned errors, we overrule Appellant's seventh assigned error.

## VIII. and IX.

**{¶48}** In the eighth and ninth assigned errors, Appellant maintains his conviction for rape is against the manifest weight and sufficiency of the evidence. We disagree.

**{¶49}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶50}** Criminal Rule 29(A) provides a court must order the entry of a judgment of acquittal on a charged offense if the evidence is insufficient to sustain a conviction on the offense. Crim.R. 29(A). However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13–10–18, 2011-Ohio-3005, 2011 WL 2448972, ¶ 43, citing *State v. Miley,* 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist.1996).

**{¶51}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶52}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016-Ohio-3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.* Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence that would demonstrate a lack of credibility of appellee's witnesses.

**{¶53}** Appellant was convicted of one count of rape, in violation of R.C. 2907.02(A)(1)(b), which reads,

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> ***

(b) The other person is less than thirteen years of age, whether or

not the offender knows the age of the other person.

{¶54} At trial herein, M.B. testified she observed Appellant, while intoxicated, on top of B.B., the parties' eight year-old child, in the parties' bed. Appellant's hand was moving. B.B. testified she was awakened by her father, who pulled off the covers, pulled down her pants, and pulled her underwear down her left leg. B.B. felt Appellant put his mouth on her "bad spot" where she goes to the bathroom. Appellant touched himself during the act, then placing his "bad spot" in her "bad spot," but "not too far."

{¶55} At trial, Vanity Maldonado, a DNA Analyst for the Ohio Bureau of Criminal Investigation, testified sperm cells and semen were positively tested on the vaginal and perianal swab collected from B.B. Erika Jimenez, of the BCI, testified the DNA from the semen found in the perianal swab demonstrated a profile consistent with Appellant, to a one in four quintillion probability. The DNA evidence demonstrated the swab obtained from B.B.'s vaginal and perianal area tested positive for the presence of semen, and the semen matched Appellant's profile to a high degree of probability.

{¶56} Based upon the evidence presented at trial, Appellant's conviction on one count of rape, in violation of R.C. 2907.02(A)(1)(b) is not against the manifest weight nor based upon insufficient evidence. The eighth and ninth assigned errors are overruled.

**{¶57}**  Appellant's conviction entered by the Guernsey County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J.  and

Wise, Earle, J. concur