**[Cite as *State v. Moore*, 2018-Ohio-2111.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2016-CA-45 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-128 |
| | : | |
| SHANE MOORE | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of June, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
      Attorney for Plaintiff-Appellee

SCOTT N. BLAUVELT, Atty. Reg. No. 0068177, 315 S. Monument Avenue, Hamilton, Ohio 45011
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Shane Moore pled guilty in the Clark County Court of Common Pleas to two counts of robbery, both felonies of the second degree, and one count of abduction, a felony of the third degree. The trial court imposed maximum eight-year sentences for both robberies and a maximum three-year sentence for the abduction, to be served consecutively. The trial court also revoked Moore's post-release control and imposed a consecutive one-year prison term. Moore's aggregate sentence was 20 years in prison.

**{¶ 2}** Moore's original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that she found no non-frivolous issues for appeal. We found that a non-frivolous issue existed regarding the trial court's imposition of maximum, consecutive sentences and appointed new counsel.

**{¶ 3}** Moore now raises three assignments of error on appeal, namely (1) the trial court erred in entering judgments on allied offenses of similar import, (2) the trial court erred in imposing consecutive sentences, and (3) Moore's trial counsel rendered ineffective assistance. For the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

**{¶ 4}** On March 14, 2016, Moore was indicted on four counts of robbery, two counts of abduction, and one count of kidnapping. The charges arose from four separate robberies on three consecutive dates in February 2016. The State's bill of particulars described the offenses as follows:

Counts One and Two [robbery and abduction]:

On February 6, 2016, * * * Shane Moore entered the [BP gas station] holding a bb gun, pointed it at the back of the cashier's [sic], grabbed her hair, and demanded the money. Shane Moore then pushed the cashier onto the ground while he removed money from the lottery drawer. He then ordered her to open the cash register and threatened to kill her. He removed all of the money and fled from the store. * * *

Count Three [robbery]:

On February 7, 2016, * * * Shane Moore entered the [Certified Gas Station,] pointed a bb gun at the cashier, and demanded the money. Shane Moore then pulled the cashier by the shirt and made her open the register. He took all of the money and fled from the store. * * *

Count Four [robbery]:

On February 8, 2016, * * * Shane Moore entered the [Ooh Ooh Drive Thru,] pointed a bb gun at the cashier, and demanded the money. He then pushed the bb gun into her side while he removed the cash from the register. * * *

Counts Five, Six, and Seven [robbery, kidnapping, abduction]:

On February 8, 2016, * * * Shane Moore entered the [Speedway Gas Station] brandishing a bb gun. Moore jumped over the counter by the cash register, and * * * one of the employees[ ] attempted to flee on foot. Moore pursued [the employee] and escorted him back to the register using the bb gun. Shane Moore then had the employee open the register, grabbed the cash from the register and fled on foot * * *.

The record reflects that Moore was on post-release control at the time of the offenses.

{¶ 5} On June 28, 2016, Moore pled guilty to Counts Four (Ooh Ooh robbery), Five (Speedway robbery), and Seven (Speedway abduction). In exchange for the pleas, the State agreed to dismiss the remaining counts in the indictment and not to refile charges in another case (Clark C.P. No. 16-CR-77), in which the charges would have been forgery and receiving stolen property. The court told Moore that his entering a guilty plea could result in proceedings to revoke his post-release control, that the court could terminate his post-release control, and that the court could sentence him to the greater of the time remaining on his post-release control or one year; the court stated that any sentence for the post-release control violation "would be in addition to any sentence the Court would impose in this case." The parties agreed that a presentence investigation would be conducted.

{¶ 6} At sentencing, the trial court heard from defense counsel, Moore, and the prosecutor. Moore read statements of apology to the victims and expressed remorse. Moore also expressed that he has "a disease called addiction," which led to the offenses. The prosecutor described Moore, who was 32 years old at sentencing, as "a very experienced criminal who, since he was a juvenile, has been engaged in very similar activities." The prosecutor played for the court a short video of the Speedway robbery on February 8. The prosecutor argued that an appropriate sentence would be "very close to, if not maximum" and consecutive sentences.

{¶ 7} The trial court imposed maximum eight-year sentences for the robberies and a maximum three-year sentence for the abduction. All of the sentences were to be served consecutively, for a total of 19 years; the court orally made the findings required

by R.C. 2929.14(C)(4) and included them in its judgment entry. The trial court also terminated Moore's post-release control, imposed one year in prison (Moore had less than one year remaining on his post-release control), and ordered that it be served consecutively to Moore's sentence. The trial court informed Moore that, upon his release, he would be subject to three years of post-release control. The trial court orally imposed restitution of $318, but did not include that order in its judgment entry. The trial court did not orally impose court costs or include court costs in its judgment entry.

{¶ 8} Moore appeals from his convictions.

## II. Allied Offenses of Similar Import

{¶ 9} In his first assignment of error, Moore claims that the trial court erred in failing to merge Counts 5 (robbery) and 7 (abduction) as allied offenses of similar import. Both of those offenses involved Moore's conduct at the Speedway gas station on February 8, 2016.

{¶ 10} Moore did not raise allied offenses at sentencing. Accordingly, he has forfeited all but plain error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Moore's alleged error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *Id.*

{¶ 11} Ohio's allied offense statute, R.C. 2941.25, provides that:

(A) Where the same conduct by defendant can be construed to constitute

two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be

convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 12} " '[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?   An affirmative answer to any of the above will permit separate convictions.   The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶ 13} As to the question of import and significance, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."   *Ruff* at ¶ 23.

{¶ 14} In regards to animus, " '[w]here an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, [a] priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime.' " *State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 70 (2d Dist.), quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979).

{¶ 15} The facts underlying the Speedway robbery are reflected in the prosecutor's

statement of facts at the plea hearing, the presentence investigation report, and a surveillance video of the robbery, which was admitted at the sentencing hearing. According to the record, two employees were in the Speedway gas station at the time of the robbery on February 8, 2016; one employee was behind the counter. Moore entered the business and brandished a BB gun. Moore jumped over the counter by the cash register and the employee behind the counter attempted to flee through the back of the store. Moore pursued the employee and escorted him back to the register using the BB gun. Moore had the employees open the registers while pointing the BB gun at them, and then had them lie on the ground. Moore grabbed the cash from the register, exited the store, and got into a vehicle that was waiting to drive him away from the scene.

{¶ 16} Moore argues that "any restraint on the victim's liberty was merely incidental to the robbery being committed by [Moore]." Moore cites to *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, in which the Ohio Supreme Court held that aggravated robbery and kidnapping were allied offenses of similar import. The supreme court commented in *Winn*, "It is difficult to see how the presence of a weapon that has been shown or used, or whose possession has been made known to the victim during the commission of a theft offense, does not also forcibly restrain the liberty of another." *Id.* at ¶ 21.

{¶ 17} Here, the record reflects that Moore did not simply display a weapon during the commission of the robbery, thereby restraining the employees simultaneously with the robbery. Rather, when an employee attempted to flee the building through the back of the store, Moore pursued the employee and brought him back to the registers at gunpoint. Moore's actions in pursuing, stopping, and returning with the employee were

separate acts and reflected an intention to prevent the employee's escape, not simply to rob the store. Accordingly, we find no error, plain or otherwise, in the trial court's failure to merge the robbery and abduction as allied offenses of similar import.

{¶ 18} Moore's first assignment of error is overruled.

### III. Imposition of Consecutive Sentences

{¶ 19} In his second assignment of error, Moore claims that the trial court's imposition of consecutive sentences was clearly and convincingly unsupported by the record. Moore asserts that the record does not support findings that (1) a 19-year sentence was not "disproportionate to the seriousness of defendant's conduct," and (2) the harm caused by the offenses "was so great or usual that no single prison term adequately reflects the seriousness" of his conduct. Moore also argues that the aggregate sentence was not the minimum sanction needed to accomplish the purposes and principles of sentencing without imposing an unnecessary burden on state resources.

{¶ 20} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 21} In determining the sentence for an offense, the trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing a maximum or more than minimum

sentence. *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 22} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 23} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, ¶ 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences

imposed by other courts. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 24} Moore asserts that the trial court's imposition of consecutive sentences is contrary to one of the overriding purposes of felony sentencing, namely "to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." In doing so, Moore conflates the analysis for determining the individual sentences with the analysis for determining whether consecutive sentences are

warranted. *See State v. Fyffe*, 2018-Ohio-112, __ N.E.3d __, ¶ 35 (2d Dist.). The thrust of his argument is that the trial court erred in imposing an aggregate 19-year sentence; he does not argue that the individual 8-year, 8-year, and 3-year sentences for the robberies and abduction, respectively, were unsupported by the record.

{¶ 25} In imposing consecutive sentences, the trial court made the findings required by R.C. 2929.14(C)(4). With respect to the third prong, the court found that Moore's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public and that the harm from Moore's course of conduct was so "great or unusual" that no single term would adequately reflect the seriousness of the offenses. The trial court stated at sentencing that it had reviewed the presentence investigation report. The State also played for the court a surveillance video from the Speedway, which showed the offense (State's Exhibit 1).

{¶ 26} The presentence investigation report (PSI) reflects that Moore was 31 years old at the time of the offenses. He has an extensive criminal history, both as a juvenile and an adult. He was found delinquent for committing numerous offenses of theft, receiving stolen property, and robbery, among other crimes. He was committed to the Department of Youth Services as a minor, and was later bound over to adult court for aggravated robbery charges, for which he was found guilty; Moore served seven years in prison for aggravated robbery with a firearm specification. As an adult, he was sentenced to two years in prison for burglary (2009), to six months in prison for possession of cocaine (2010), and to three years in prison for another burglary (2010). In 2014 and 2015, Moore had misdemeanor convictions for falsification, complicity to theft, theft, and resisting arrest.

{¶ 27} Moore acknowledged at his plea hearing that he was on post-release control. Defense counsel stated at the plea hearing that Moore believed that the post-release control was set to expire in November 2016; the trial court's judgment entry indicated that it was to expire on September 5, 2016. (The PSI indicates that, on November 9, 2010, Moore was convicted of burglary in Mercer County, and he was sentenced to three years in prison. The post-release control obligation appears to stem from this Mercer County conviction, but that judgment entry is not before us.)

{¶ 28} Upon review of Moore's extensive criminal history for similar offenses, including the fact that he has previously been incarcerated for aggravated robbery and two separate burglaries, we cannot find, as required by the Ohio Supreme Court, that the trial court's imposition of consecutive sentences was clearly and convincingly unsupported by the record. Given that conclusion, we need not address whether the trial court's "course of conduct" finding was clearly and convincingly unsupported by the record.

{¶ 29} Moore's second assignment of error is overruled.

### IV. Ineffective Assistance of Counsel

{¶ 30} In his third assignment of error, Moore claims that his trial counsel rendered ineffective assistance by failing to raise that his robbery (Count 5) and abduction (Count 7) charges were allied offenses of similar import. Moore argues that those offenses were allied offenses and that counsel's actions prejudiced him in that the trial court imposed consecutive sentences for those offenses. For the reasons stated above, we find that the robbery and abduction charges for the Speedway robbery were not allied offenses of similar import. Accordingly, counsel did not act deficiently in failing to seek the merger

of those charges.

**{¶ 31}** Moore's third assignment of error is overruled.

### V. Conclusion

**{¶ 32}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and DONOVAN, J., concur.

Copies mailed to:

Andrew P. Pickering
Scott N. Blauvelt
Hon. Douglas M. Rastatter