[Cite as *State v. Sowers*, 2019-Ohio-649.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-58 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-80 |
| | : | |
| WILLIAM SOWERS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of February, 2019.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant William Sowers appeals his conviction and sentence for the following offenses: Count I, felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; Count II, domestic violence, in violation of R.C. 2919.25(A), a felony of the third degree; Count III, kidnapping, in violation of R.C. 2905.01(A)(3), a felony of the first degree; and Count IV, abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree.   Sowers filed a timely notice of appeal with this court on May 3, 2018.

{¶ 2} The incident which forms the basis for this appeal occurred during the evening of January 24, 2018, and the early morning hours of January 25, 2018, at the shared residence of Sowers and Linda McKinney in Springfield, Ohio.   As they returned home from the grocery store, Sowers and McKinney were arguing about ordering dinner at an Arby's fast-food restaurant.   Immediately after entering their residence, Sowers shoved McKinney and kicked her dog.   McKinney pushed Sowers away from her and went into their shared bedroom.   Sowers followed McKinney into the bedroom and pushed her to the ground.   Sowers then began punching and kicking McKinney in the head and upper body.   Sowers also pushed furniture down on top of McKinney and hit her with a chair.   After jumping up and down on McKinney several times, Sowers dragged her by her hair into the living room and rubbed hand sanitizer on her face while continuing to punch her in the face.

{¶ 3} At some point after the assault, McKinney attempted to leave the residence through the front door.   Sowers, however, pulled McKinney back inside the residence, telling her that she was "not going to run like the rest of them did."   Sowers then dragged

McKinney and allowed her to get a drink of water, because she said that she was thirsty. Thereafter, Sowers pulled McKinney into his son's bedroom and made her sit on the bed. After kicking her legs several times, Sowers produced a lighter and told McKinney that he was going to set her on fire.

{¶ 4} Sowers then forced McKinney into the bathroom and made her take a shower. Before entering the shower, McKinney looked in the mirror and observed that she was bloody, bruised, and one of her eyes was swollen shut. After McKinney finished showering, Sowers would not let her put on any clothes. Sowers then forced McKinney to sit on the couch in the living room. McKinney repeatedly asked Sowers if she could leave the residence, but he informed her that she could not leave until her injuries healed. To keep McKinney from leaving, Sowers laid down on the couch with his legs over her to keep her from moving.

{¶ 5} Once Sowers fell asleep, McKinney was able to retrieve his cellphone and call 911, quietly providing her address to the dispatcher. Shortly thereafter, the police arrived at the residence, and McKinney was able to get out from under Sowers. McKinney initially tried to use the front door to exit the house, but it would not open. Ultimately, McKinney was able to exit the house through the side door where police were waiting for her. McKinney was able to identify Sowers as her attacker to the police, and he was arrested and taken into custody.

{¶ 6} When she was rescued by the police, McKinney was still naked, but one of the officers went into the residence to retrieve some clothes for her to wear. McKinney was then transported to the Springfield Regional Medical Center, where she was treated for her injuries. Her treatment included inserting a chest tube in order to re-inflate her

left lung. McKinney was eventually flown to Miami Valley Hospital for further treatment. McKinney's injuries included broken ribs, a collapsed lung, and extensive bruising on her arms, chest, legs and face.

{¶ 7} On February 5, 2018, Sowers was indicted for one count of kidnapping, one count of abduction, one count of felonious assault, and one count of domestic violence. A jury trial was held on April 11, 2018, and Sowers was found guilty of all counts in the indictment. At the sentencing hearing held on April 20, 2018, the trial court merged Sowers's convictions for kidnapping and abduction, as well as his convictions for felonious assault and domestic violence. The State elected to proceed to sentencing on Sowers's convictions for felonious assault and kidnapping. The trial court refused Sowers's request to merge his convictions for felonious assault and kidnapping. Thereafter, the trial court sentenced Sowers to eight years in prison for felonious assault and eight years for kidnapping. The trial court ordered the sentences to be served consecutively for an aggregate sentence of 16 years of imprisonment.

{¶ 8} It is from this judgment that Sowers now appeals.

{¶ 9} Sowers's sole assignment of error is as follows:

THE TRIAL COURT FAILED TO MERGE ALL OF THE ALLIED OFFENSES FOR SENTENCING.

{¶ 10} In his sole assignment, Sowers contends that the trial court erred when it refused to merge all of his convictions at sentencing. Specifically, Sowers argues that his convictions for felonious assault and kidnapping were subject to merger as the offenses were committed with the same animus, were not committed separately, and were not dissimilar in import.

{¶ 11} R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 12} The Ohio Supreme Court clarified the applicable standard when determining whether offenses merge as allied offenses of similar import in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892:

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2)

Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 30-31.

{¶ 13} In *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, we stated the following:

[T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson*[, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the Ohio Supreme Court applied in *Earley*. We see nothing in *Ruff* that alters

or undermines the foregoing analysis about [the defendant's] commission of murder and aggravated robbery involving the same conduct committed with the same animus. For the reasons set forth above, we conclude that the two offenses were not committed separately and were not committed with a separate animus or motivation. These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25 [and] ¶ 30-31.

*Id.* at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51, 60 (2d Dist.).

**{¶ 14}** An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

**{¶ 15}** Recently, we discussed whether a defendant's convictions for robbery and abduction merged for purposes of sentencing. In *State v. Moore*, 2d Dist. Clark No. 2016-CA-45, 2018-Ohio-2111, we stated:

* * * According to the record, two employees were in the Speedway gas station at the time of the robbery on February 8, 2016; one employee was behind the counter. Moore entered the business and brandished a BB

gun. Moore jumped over the counter by the cash register and the employee behind the counter attempted to flee through the back of the store. Moore pursued the employee and escorted him back to the register using the BB gun. Moore had the employees open the registers while pointing the BB gun at them, and then had them lie on the ground. Moore grabbed the cash from the register, exited the store, and got into a vehicle that was waiting to drive him away from the scene.

* * *

Here, the record reflects that Moore did not simply display a weapon during the commission of the robbery, thereby restraining the employees simultaneously with the robbery. Rather, when an employee attempted to flee the building through the back of the store, Moore pursued the employee and brought him back to the registers at gunpoint. *Moore's actions in pursuing, stopping, and returning with the employee were separate acts and reflected an intention to prevent the employee's escape, not simply to rob the store.* Accordingly, we find no error, plain or otherwise, in the trial court's failure to merge the robbery and abduction as allied offenses of similar import.

(Emphasis added.) *Id.* at ¶ 15, 17.

{¶ 16} Applying the rationale in *Moore* to the facts in the instant case, we cannot find that the trial court erred when it failed to merge Sowers's convictions for felonious assault and kidnapping. Here, the record reflects that Sowers assaulted McKinney over a long period of time during the night of January 24, 2018, and the early morning of

January 25, 2018.   However, when Sowers stopped assaulting McKinney, he attempted to prevent her from leaving the residence in an effort to conceal his earlier conduct.   After he was finished assaulting McKinney, he forced her to take a shower, after which he did not punch or kick her any further.

{¶ 17} In *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979), paragraph one of the syllabus, the court provided the following guidelines for determining whether kidnapping and another offense are allied offenses that should merge prior to sentencing:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.*

{¶ 18} Although *Logan* predates *Ruff*, Ohio courts continue to apply the guidelines set forth in *Logan* in determining whether kidnapping and another offense were committed with a separate animus, in accordance with the third prong of the *Ruff* test. *See e.g. State*

*v. Armengau*, 10th Dist. Franklin No. 14AP-679, 2017-Ohio-4452, ¶ 125, citing *State v. D.E.M.*, 10th Dist. Franklin No. 15AP-589, 2016-Ohio-5638, ¶ 143; *State v. Williams*, 43 N.E.3d 797, 2015-Ohio-4100, ¶ 18 (7th Dist.); *State v. Stinnett*, 5th Dist. Fairfield No. 15-CA-24, 2016-Ohio-2711, ¶ 53.

{¶ 19} Sowers's actions in assaulting McKinney, stopping the assault to compel her to shower, and then laying on top of her on the sofa to prevent her from leaving the residence were separate and identifiable acts committed with a separate animus. Simply put, once Sowers concluded his assault of McKinney, his focus changed to concealing the assault by not allowing her to leave the residence. This is apparent, in part, from Sowers's statement to McKinney that she could not leave until she was healed. In order to keep her from leaving, thereby concealing the assault, Sowers literally fell asleep on the couch with his legs on top of McKinney, ostensibly so that she could not leave without his knowledge. Sowers's conduct in preventing McKinney from leaving the residence (kidnapping) involved a separate harm from the harm that was involved in the commission of the felonious assault and was committed with a separate animus. Thus, the trial court did not err when it refused to merge Sowers's convictions for felonious assault and kidnapping.

{¶ 20} Sowers's sole assignment of error is overruled.

{¶ 21} Sowers's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Megan M. Farley
John S. Pinard
Hon. Douglas M. Rastatter