[Cite as *State v. Fultz*, 2019-Ohio-2593.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-22 |
| | : | |
| v. | : | Trial Court Case Nos. 2017-CR-286 |
| | : | 2018-CR-100 |
| BRYAN KARL FULTZ | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of June, 2019.

. . . . . . . . . . .

SAMUEL ADAM USMANI, Atty. Reg. No. 0069198, Champaign County Prosecutor's Office, Appellate Division, 200 N. Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 W. Second Street, Suite 1717, Liberty Tower, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} In Champaign C.P. No. 2018-CR-100, Bryan Karl Fultz pled guilty in the Champaign County Court of Common Pleas to six drug offenses, for which he received consecutive sentences totaling 85 months in prison and was ordered to pay a mandatory fine of $5,000 and court costs.   The trial court also revoked Fultz's community control in Champaign C.P. No. 2017-CR-286 and terminated Fultz's post-release control in a third case, and the court imposed additional consecutive sentences.   For the following reasons, the judgment in Case No. 2018-CR-100 will be affirmed in part, reversed in part, and remanded for further proceedings.   The judgment in Case No. 2017-CR-286 will be affirmed.

## I. Facts and Procedural History

{¶ 2} A 17-year-old female required emergency medical treatment after taking some L.S.D. that Fultz had sold.   In May 2018, after an investigation by law enforcement, Fultz was indicted in Case No. 2018-CR-100 on 23 drug-related offenses.[1]   He later pled guilty to six counts: trafficking in marijuana, a fifth-degree felony; possession of L.S.D., a third-degree felony; aggravated possession of drugs, a fifth-degree felony; aggravated trafficking in drugs, a fourth-degree felony; and two counts of trafficking in L.S.D., both

---

[1] The charges consisted of two counts of trafficking in marijuana, fourth-degree felonies; seven counts of trafficking in marijuana, fifth-degree felonies; one count of possession of marijuana, a fifth-degree felony; one count of possession of L.S.D., a third-degree felony; two counts of trafficking in L.S.D., fifth-degree felonies; one count of trafficking in L.S.D., a third-degree felony; one count of aggravated possession of drugs, a fifth-degree felony; two counts of aggravated trafficking in drugs, fourth-degree felonies; one count of aggravated trafficking in drugs, a fourth-degree felony; one count of illegal use or possession of drug paraphernalia, a fourth-degree misdemeanor; one count of illegal use or possession of drug paraphernalia, a minor misdemeanor; two counts of permitting drug abuse, fifth-degree felonies; and one count of possession of criminal tools, a fifth-degree felony.

fifth-degree felonies. The remaining charges were dismissed, and the court ordered a presentence investigation.

{¶ 3} At sentencing, the State asked the court to impose prison sentences totaling seven years in Case No. 2018-CR-100, to revoke Fultz's community control in Case No. 2017-CR-286 and impose 18 months in prison, and to terminate Fultz's post-release control in another case (Champaign C.P. No. 2012-CR-120) and impose a prison term of 1,095 days (three years). Defense counsel acknowledged that Fultz had made "immature decisions" but asserted that "there is a * * * cry from [Fultz]" and that Fultz's step-mother had expressed a willingness to help him. Defense counsel requested community control, although he recognized that community control was "a tough thing to ask for." Speaking on his own behalf, Fultz acknowledged that he "deserve[d] some kind of punishment," but he asked for help with his drug problem.

{¶ 4} In Case No. 2018-CR-100, the trial court imposed a prison sentence for each offense and ordered Fultz to serve all but one of the sentences consecutively, for a total of 85 months in prison; the court also imposed a mandatory fine of $5,000, and ordered him to pay court costs. The trial court also revoked Fultz's community control in Case No. 2017-CR-286 and ordered him to serve 18 months in prison, to be served consecutively to the sentence in Case No. 2018-CR-100. In addition, the trial court terminated Fultz's post-release control in Case No. 2012-CR-120 and ordered him to serve 1,351 days consecutively to the sentences imposed in the other cases. The total sentence in all cases was approximately 12 years and 3 months in prison. The trial court filed a judgment entry that addressed both Case Nos. 2017-CR-286 and 2018-CR-100.

{¶ 5} Fultz appeals from the trial court's judgments, raising two assignments of

error.   We will address them in reverse order.

## II. "Excessive" and Consecutive Sentences

{¶ 6} In his second assignment of error, Fultz claims that the trial court "erred when it imposed excessive and consecutive sentences, contrary to law, against [him]."

{¶ 7} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2).   *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9.   Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 8} In determining the sentence for an offense, the trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.   *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).   However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12.   *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 9} In general, it is presumed that prison terms will be served concurrently.   R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, ¶ 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences").   However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual

counts of a sentence consecutively to each other or to sentences imposed by other courts. *State v. Moore*, 2d Dist. Clark No. 2016-CA-45, 2018-Ohio-2111, ¶ 23.

{¶ 10} To impose consecutive sentences, a trial court must make three findings under R.C. 2929.14(C) that overcome the presumption. *Bonnell* at ¶ 37. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*See State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252.

{¶ 11} On appeal, Fultz emphasizes that, in Case No. 2018-CR-100, four of the

drug charges were felonies of the fifth degree, one was a felony of the fourth degree, and one was a felony of the third degree. He states that, based on those offenses levels, five of the six offenses had a presumption of community control. Fultz states that, despite the "low level" nature of the offenses, the trial court imposed the maximum prison term for three offenses and close to the maximum sentence for the other three, and then chose to order five out of six sentences to be served consecutively. Fultz acknowledges, however, that he has a criminal history revolving around drugs.

{¶ 12} To the extent that Fultz challenges the individual sentences imposed for the six drug offenses, the record reflects that the trial court was not required to impose community control sanctions for the fifth-degree and fourth-degree felony offenses. Under R.C. 2929.13(B)(1)(b), a trial court has the discretion to impose a prison sentence on an offender who pleads guilty to a fourth-degree or fifth-degree felony if the offender had previously served a prison term, R.C. 2929.13(B)(1)(b)(x), or if the offender committed the offense while under a community control sanction, R.C. 2929.13(B)(1)(b)(xi). Fultz previously had served a prison sentence, was on post-release control, and was on community control in Case No. 2017-CR-286 when he committed the new offenses.

{¶ 13} Moreover, the trial court complied with its obligation to consider R.C. 2929.11 and R.C. 2929.12. The trial court made several relevant findings when it considered the seriousness and recidivism factors in R.C. 2929.12. The court concluded that the factors establishing Fultz's conduct as more serious outweighed the factors establishing his conduct as less serious. At the time that he committed the offenses in this case, Fultz was on post-release control for a felony sex-offense involving another

juvenile victim and on community-control supervision for a felony drug offense involving a juvenile victim. The charges in this case also involved a juvenile and drugs. The court found that Fultz had committed the offenses for hire or as a part of organized criminal activity with two others. He possessed and sold three different types of drugs (marijuana, L.S.D., psilocyn) in significant amounts in order to make money to supplement his employment income and not because of a drug addiction. The court further found that Fultz "declined to share his lifestyle challenges (loss of housing, peer support, etc.) with his supervising officer and instead turned to drug trafficking in order to address those challenges." The only factor that the court found that made his conduct less serious was that no one died from using his drugs.

{¶ 14} The trial court also concluded that the factors establishing that Fultz's recidivism was more likely outweighed the factors establishing that his recidivism was less likely. Again, the court noted that at the time Fultz committed the offenses in this case, he was on post-release control for a felony sex-offense involving a juvenile victim and on community-control supervision for a felony drug offense involving a juvenile victim. Fultz previously was adjudicated a delinquent child and had a history of criminal convictions. The court found that he had not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child and had not responded favorably to sanctions previously imposed for criminal convictions. The court also found that Fultz showed no genuine remorse for his offenses and had a high ORAS score. The trial court found that no factors applied that would make recidivism less likely. We cannot conclude that the trial court's individual sentences were contrary to law or were clearly and convincingly unsupported by the record.

{¶ 15} As to the court's imposition of consecutive sentences, the trial court made the required statutory findings. The court found that consecutive sentences were necessary to protect the public or to punish Fultz and that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger that he posed to the public. The court also found that Fultz committed one or more of the offenses while he was awaiting trial or sentencing, was on community control, or was under post release control for a prior offense. Lastly, the court found that Fultz's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him. Upon review of the record, those findings were not clearly and convincingly unsupported by the record. Accordingly, the trial court did not err in ordering the sentences in Case No. 2018-CR-100 to run consecutively or the sentence in Case No. 2017-CR-286 to run consecutively to the sentences in Case No. 2018-CR-100.

{¶ 16} Fultz has not specifically argued that the trial court erred in imposing the post-release control penalty consecutively. R.C. 2929.141 addresses sentencing on a felony committed by a person under post-release control at the time of the offense. Under that statute, if a trial court elects to terminate the term of post-release control, it may (but is not required to) impose a prison term for the post-release control violation. If the court elects to impose a prison term, that term must be served consecutively to any prison term imposed for the new felony. R.C. 2929.141(A)(1). Accordingly, the trial court did not err in ordering the prison term for the post-release control violation to be served consecutively.

{¶ 17} Fultz's second assignment of error is overruled.

### III. Ineffective Assistance of counsel

{¶ 18} In his first assignment of error, Fultz claims that his trial counsel "was ineffective for failing to file an affidavit of indigency prior to sentencing because the record shows a reasonable probability that the court would have relieved [him] of a mandatory fine."

{¶ 19} R.C. 2929.18(B)(1) requires a sentencing court to impose a mandatory fine for a third-degree felony violation of R.C. Chapter 2925 unless (1) the offender files an affidavit of indigency before sentencing, alleging that "the offender is indigent and unable to pay the mandatory fine," and (2) the court "determines the offender is an indigent person and is unable to pay the mandatory fine."

{¶ 20} The failure to file an affidavit of indigency may constitute ineffective assistance of counsel if the record shows a reasonable probability that, had the affidavit been filed, the court would have found the defendant indigent and relieved him of the obligation to pay the mandatory fine (i.e., that Fultz was prejudiced by the absence of an affidavit of indigency).[2]  *State v. Sheffield*, 2d Dist. Montgomery No. 20029, 2004-Ohio-3099.   Prejudice means a "reasonable probability that but for counsel's errors, the result of the proceeding would have been different."   *State v. White,* 85 Ohio St.3d 433, 450, 709 N.E.2d 140 (1999).   "Reasonable probability" means a probability sufficient to undermine confidence in the outcome.   *State v. Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 21} Fultz was indicted in Case No. 2018-CR-100 on May 7, 2018.   At his

---

[2] A similar issue regarding counsel's failure to file a motion to waive costs at sentencing is pending in the Ohio Supreme Court, *State v. Davis,* Case No. 2018-0312. Under R.C. 2947.23(C), the trial court retains jurisdiction to waive, suspend or modify the payment of costs, but not financial sanctions, such as fines.

arraignment the following day, the court determined, after discussion with Fultz, that Fultz was indigent, and the court appointed counsel. An arraignment with counsel was scheduled for May 10, 2018, two days later. According to the "journal entry of arraignment with counsel," filed on May 10, court staff provided defense counsel a Financial Disclosure/Affidavit of Indigency form and instructions for completion; defense counsel and Fultz were instructed to meet and complete the form.

{¶ 22} Fultz entered his guilty pleas on May 15, 2018, five days later, and the court sentenced him on June 6, 2018, less than a month after his indictment. No financial disclosure form or affidavit of indigency was filed prior to sentencing. A financial disclosure form was filed on June 29, 2018, in conjunction with the notice of appeal. The financial disclosure form stated that he had no assets.

{¶ 23} At sentencing, Fultz expressed to the court that he resorted to selling drugs, because the person he was living with was evicted and he needed money for rent, which was $450. Fultz had $1,300 on his person when he was arrested; he said that part of the money was from drug sales and some was his income tax refund from working at two fast-food restaurants. Fultz explained that he was about to give $700 to his drug dealer and would have used the rest to pay for rent, cigarettes, food, utilities, and WiFi.

{¶ 24} The court reviewed the presentence investigations reports from both Case Nos. 2017-CR-286 and 2018-CR-100. They reflected that Fultz was 25 years old, had dropped out of high school in ninth grade, and was awaiting his GED test results. Fultz reported that he was a "slow learner in reading and math." Fultz had obtained a certificate for welding while in prison. Fultz had obtained employment at two fast-food restaurants in 2017, but he was not then employed. Fultz had several unruly and

criminal mischief juvenile adjudications, several adult misdemeanor offenses, and two prior felony cases, for which he ultimately served a prison sentence; one felony offense was a sex offense, for which Fultz was designated a Tier II sex offender. Fultz reported good physical health, but a diagnosis of PTSD and anxiety.

{¶ 25} At sentencing, the court ordered Fultz to pay a $5,000 mandatory fine on Count Three (the third-degree felony) of Case No. 2018-CR-100 and court costs. In its judgment entry, the court stated that it had considered Fultz's present and future ability to pay. It indicated that it had considered, in particular, the information in the presentence investigation report related to Fultz's age, health, education and employment history, as well as the statements of the prosecutor, defense counsel, and Fultz. The Court found, both orally and in its judgment entry, that Fultz was "employable and in good health."

{¶ 26} The trial court further addressed Fultz's future ability to pay in the portion of the judgment entry labeled, "Court Order for Withholding of Funds from Inmate's Account." The court stated: "[I]n addition to the information provided by the pre-sentence investigation report and statements of the Prosecutor, Defense Counsel and Defendant at sentencing, the Court also considered that as an inmate, the Defendant would have the possibility of employment in inmate work programs * * *."

{¶ 27} In this case, Fultz's trial counsel did not file an affidavit of indigency prior to sentencing or request a waiver of the mandatory fine at sentencing. However, less than one month prior to sentencing, the trial court had appointed an attorney to represent Fultz. Although the court found Fultz to be "employable and in good health" and that he would have the "possibility of employment in inmate work programs," Fultz was 25 years old,

was sentenced to over 12 years in prison, had previously served a prison sentence, must register as a Tier II sex offender for 25 years, had a sporadic work history at fast-food restaurants, left school in the ninth grade, was previously diagnosed with PTSD, and was in "special education classes."  Fultz had tested for a GED and received a certificate for welding, but whether he would be eligible for some sort of paid work while in prison and, if so, at what rate and for how long, is not in the record.  The financial disclosure form filed in June 2018 showed that Fultz had no assets.  We therefore conclude that there is a reasonable probability that, had an affidavit of indigency been filed, the court would have found the defendant indigent and relieved him of the obligation to pay the mandatory fine.  *See, e.g. State v. Turner*, 8th Dist. Cuyahoga No. 102741, 2015-Ohio-4388.

{¶ 28} The first assignment of error is sustained.

### IV. Prison Sentence upon Termination of Post-Release Control

{¶ 29} Fultz was orally sentenced in Case No. 2018-CR-100 on June 6, 2018, and the court filed its judgment entry the following day.  On September 7, 2018, this court rendered an opinion in *State v. Evilsizor*, 2d Dist. Champaign Nos. 2017-CA-1 and 2017-CA-10, 2018-Ohio-3599, which addressed the calculation of time remaining on post-release control when the court terminates post-release control and imposes a prison sentence.  Fultz's appellate brief was filed on October 23, 2018; it did not raise an assignment of error related to the trial court's order that he serve 1,351 days as a post-release control sanction.  Nevertheless, given the timing of Fultz's sentencing and the briefing in his appeal, we invited the parties to file simultaneous supplemental briefs addressing whether the trial court erred in calculating the amount of time remaining on Fultz's post-release control for purposes of R.C. 2929.141(A)(1).

{¶ 30} Both parties have filed supplemental briefs.   Fultz claims that the trial court erred in using the date of one of his new offenses, rather than his sentencing, for determining the amount of time remaining on his post-release control.   The State concedes this error, but asks us to modify Fultz's sentence to 1,289 days, which it states is the maximum number of days Fultz could have received.   The State argues that the trial court gave the maximum term of imprisonment that it believed was allowed, and thus modification to the correct maximum amount, rather than remand, is an appropriate remedy.

{¶ 31} We stated in *Evilsizor*:

R.C. 2929.141 directs the actions that a trial court may take *at sentencing* regarding an individual who was convicted of or pled guilty to a felony and was on post-release control at the time of the commission of the felony.   As stated above, the statute gives the trial court the discretion to terminate post-release control and impose a prison sentence, the maximum term of which may be the greater of 12 months or "the period of post-release control for the earlier felony *minus any time the person has spent under post-release control for the earlier felony*." (Emphasis added.) R.C. 2929.141(A)(1) expressly states that the imposition of the prison term terminates the period of post-release control for the earlier felony. Accordingly, by the statute's plain language, the relevant time for determining the amount of time remaining on an offender's post-release control is at sentencing, when post-release control is terminated by the court.   *See, e.g., State v. Wells*, 5th Dist. Licking No. 14-CA-36, 2015-Ohio-

39, ¶ 7-8 (time remaining on defendant's post-release control should have been calculated from the date of sentencing, not the date of the new offense); *State v. Harris*, 1st Dist. Hamilton No. C-130442, 2014-Ohio-4237, ¶ 40 (defendant's post-release control, which was not administratively revoked, did not terminate until the trial court imposed a prison term for the post-release control violation).   *Accord* [*State v.*] *Harkins*, 2d Dist. Clark No. 2012 CA 2, 2012-Ohio-4746, at ¶ 23 (calculating time remaining on post-release control from date of sentencing).

*Evilsizor* at ¶ 20.

{¶ 32} Here, the record reflects that Fultz was placed on post-release control on December 18, 2016.   The trial court held a sentencing hearing in Case No. 2018-CR-100 on June 6, 2018.   At that time, the prosecutor told the court that he had calculated the time remaining on Fultz's post-release control as 1,345 days, which was based on April 11, 2018 as the date of the new offense.   In response, the trial court noted that there were different offense dates for different counts.   After further discussion, the trial court indicated that it would use April 5, 2018, the date of one of the offenses.   Using that date, the trial court terminated Fultz's post-release control and imposed 1,351 days in prison, to be served consecutively.   When the sentencing hearing occurred, Fultz had 1,290 days remaining on his post-release control.

{¶ 33} Because the prison sentence imposed under R.C. 2929.141 exceeded the amount of time remaining on Fultz's post-release control, the prison sentence for the post-release control violation must be reversed.   Because the length of the prison term is, to some extent, a matter within the trial court's discretion, we conclude that the matter must

be remanded for resentencing on that issue. We emphasize that R.C. 2929.141 establishes the maximum prison term for a violation of post-release control. Upon remand, the trial court may exercise its discretion, up to the statutory maximum, in determining the appropriate prison term for Fultz's post-release control violation.

## V. Conclusion

{¶ 34} In summary, with respect to Fultz's sentencing in Case No. 2018-CR-100, we conclude that trial counsel rendered ineffective assistance by failing to file an affidavit of indigency for purposes of seeking a waiver of the mandatory fine and that the trial court erred in calculating the time remaining on Fultz's post-release control. Accordingly, the judgment in Case No. 2018-CR-100 will be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The judgment in Case No. 2017-CR-286 will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., concurs in part and dissents in part:

{¶ 35} I agree that the trial court did not err in imposing consecutive sentences and that the record does not fail to support consecutive sentencing by clear and convincing evidence. I concur in the resolution of the second assignment of error.

{¶ 36} I disagree with the conclusion that trial counsel's failure to supply an affidavit of indigency in regard to the mandatory fine constitutes reversible error because the trial court considered and reasonably determined that Fultz had the present and future ability to pay the fine. I therefore dissent, in part.

**{¶ 37}** To be sure, "[t]he failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel if the record shows a reasonable probability that the trial court would have found Defendant indigent and relieved him of the obligation to pay the fine had the affidavit been filed." (Citations omitted.) *Sheffield*, 2d Dist. Montgomery No. 20029, 2004-Ohio-3099, ¶ 13; *State v. Davenport*, 2017-Ohio-688, 85 N.E.3d 443, ¶ 37 (2d Dist.) (quoting the same). The question is whether there is "a reasonable probability that the trial court would have found Defendant indigent and unable to pay the fine had defense counsel filed an affidavit of indigency prior to sentencing." *Sheffield* at ¶ 14.

**{¶ 38}** The record here shows that, before imposing the financial sanctions on Fultz, the trial court considered his present and future ability to pay. The judgment of conviction states:

> In imposing the following financial obligations upon the Defendant, the Court has reviewed and considered the information contained in the pre-sentence investigation report (relating to the Defendant's age, health, education and employment history) and the statements of the Prosecutor, Defense Counsel and Defendant in considering the Defendant's present and future ability to pay the amount of the financial obligation before imposing such a financial sanction.

The court then found that Fultz "is employable and in good health." As to his future ability to pay, the court said that "in addition to the information provided by the pre-sentence investigation [PSI] report and statements of the Prosecutor, Defense Counsel and Defendant at sentencing, the Court also considered that as an inmate, the Defendant

would have the possibility of employment in inmate work programs * * *."

{¶ 39} A financial disclosure form for Fultz filed on June 29, 2018, for this appeal shows that he has no assets. And when he is released from prison in twelve years, Fultz will be around 37 years old and will have a lengthy criminal history, including juvenile offenses, all of which could affect his ability to find gainful employment. But the PSI report and transcript of the sentencing hearing support the trial court's finding that Fultz will be able to pay the financial sanctions. At the time Fultz was arrested, he was employed at Taco Bell and Wendy's. The PSI report says that he "expressed the willingness to work." Regarding Fultz's education, the PSI report says that he left school in grade nine but that he reported that he "recently completed school and earned his diploma." The PSI also says that while he was in prison previously, "he received training and a certificate for welding." At the sentencing hearing, the trial court too noted that Fultz had gotten a welding certificate and also mentioned that he was going to school to become an electrician. And as the court pointed out, Fultz was eligible to work while in prison.

{¶ 40} The majority cites *State v. Turner,* 8th Dist. Cuyahoga No. 102741, 2015-Ohio-4388, to support the conclusion there was a reasonable possibility that the trial court would have relieved Fultz from the mandatory fine. But in *Turner* the mandatory fine was $10,000, double the amount here. And the facts were "that Turner has an extensive criminal history, beginning as a juvenile through the present time; he has been in and out of jail throughout the years; he has seven children and owes money for child support; he lives with his mother, and the presentence investigation report indicates he is unemployed and sells drugs to support himself. According to the PSI, 'he was asked to rate his current financial status on a scale of a 1 (cannot pay bills) to a 5 (pay bills and have extra money);

he stated a 1.' " *Id.* at ¶ 20.

{¶ 41} Given the record before us, there is more than adequate evidence to support the trial court's findings; the trial court knew it had appointed counsel for Fultz,[3] but an additional affidavit of indigency would have made no difference. We should not substitute our judgment for that of the trial court merely because assessment of a statutorily mandatory fine may appear harsh or because the policy of imposing mandatory fines may be regressive. In my opinion, there is not a reasonable probability that the trial court would have found Fultz indigent and unable to pay the mandatory fine had counsel filed an affidavit of indigency before sentencing. Accordingly I dissent from the resolution of the first assignment of error.

. . . . . . . . . . . .

Copies sent to:

Samuel Adam Usmani
Kristin L. Arnold
Hon. Nick A. Selvaggio

---

[3] " 'A finding that a defendant is indigent for purposes of appointed counsel does not shield the defendant from paying court costs or a financial sanction.' " *State v. Hodge*, 2d Dist. Montgomery No. 23964, 2011-Ohio-633, ¶ 55, quoting *State v. Felder*, 2d Dist. Montgomery No. 21076, 2006-Ohio-2330, ¶ 64.